UNITED STATES DISTRICT COURT
                                DISTRICT OF MAINE

THOMAS P.,                              )
                                        )
                Plaintiff                )
                                        )
v.                                      )       No. 2:18-cv-00075-GZS
                                        )
NANCY A. BERRYHILL,                     )
Acting Commissioner of Social Security, )
                                        )
                Defendant                )

                      REPORT AND RECOMMENDED DECISION[1]

    This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable, as of September 30, 2014, his date last insured for SSD benefits, of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in evaluating (i) his impairments of post-concussion syndrome, obesity, and carpal tunnel syndrome, (ii) certain medical opinions, and (iii) his subjective complaints. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 6-15. I find no harmful error and, accordingly, recommend that the court affirm the commissioner's decision.

    Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

relevant part, that the plaintiff's date last insured ("DLI") for SSD benefits was September 30, 2014, Finding 1, Record at 15; that, through his DLI, he had the severe impairment of degenerative disc disease, Finding 3, *id.*; that, through his DLI, he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could frequently push and pull at the light weight limits, could occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, could frequently reach in all directions with the right upper extremity, could not work in extreme cold or with vibration, could not work at unprotected heights or with dangerous moving machinery, could not drive, and could not work with flashing or strobing lights, Finding 5, *id.* at 17-18; that, through his DLI, considering his age (49 years old, defined as a younger individual, on his DLI), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 22; and that he, therefore, had not been disabled from February 13, 2013, his alleged onset date of disability, through September 30, 2014, his DLI, Finding 11, *id.* at 23. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Evaluation of Impairments

The plaintiff first complains that, at Step 2, the ALJ failed to properly evaluate his impairments of post-concussion syndrome, obesity, and carpal tunnel syndrome, as a result of which she failed to evaluate the combined impact of those impairments in determining his RFC at Step 4. *See* Statement of Errors at 6-9.

As a general rule, a "[c]laimant is not entitled to [SSD] benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status." *Cruz Rivera v. Sec'y of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir. 1986). "It is not sufficient for a claimant to

establish that [his] impairment had its roots before the date that [his] insured status expired." *Moret Rivera v. Sec'y of Health & Human Servs.*, No. 93-1700, 1994 WL 107870, at *5 (1st Cir. Mar. 23, 1994). "Rather, the claimant must show that [his] impairment(s) reached a disabling level of severity by that date." *Id*.

### 1. Post-Concussion Syndrome

The plaintiff asserts that the ALJ erred in assessing the impact of headaches and memory loss caused by post-concussion syndrome stemming from injuries he sustained in a motor vehicle accident on February 13, 2013, his alleged onset date of disability. *See* Statement of Errors at 6-7. He complains, in the main, that the ALJ erroneously deemed those conditions nonsevere on the basis that his post-concussion syndrome was not diagnosed until after his DLI. *See id*. He adds that the ALJ failed to assess the severity of his memory loss in accordance with the commissioner's special psychiatric review technique. *See id*.; 20 C.F.R. § 404.1520a(b)-(c) (if an ALJ finds a medically determinable mental impairment, she must determine its severity by rating the degree of a claimant's functional impairment in four broad areas).

As a threshold matter, as the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 14) at 2-4, the ALJ cited the timing of the plaintiff's diagnosis of post-concussion syndrome not as a basis for deeming that condition nonsevere but, rather, for finding that it was not a medically determinable impairment as of his DLI, *see* Record at 16. Therefore, by definition, the condition could not have been found severe. *See, e.g*., Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018) ("SSR 96-7p"), at 132 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably

4

be expected to produce the symptoms."); *Dennett v. Astrue*, Civil No. 08-97-B-W, 2008 WL 4876851, at *3 (D. Me. Nov. 11, 2008) (rec. dec., *aff'd* Dec. 4, 2008) ("An [ALJ] need consider the severity of a mental impairment only to the extent that a claimant has met his or her burden of demonstrating that a 'medically determinable' mental impairment exists.").[2]

In any event, even assuming *arguendo* that the ALJ should have found the plaintiff's post-concussion syndrome a medically determinable impairment as of his DLI, she found, in the alternative, that the condition had "not created more than minimal work related limitations and is considered not severe." Record at 16. As the commissioner argues, *see* Opposition at 3, the plaintiff has not shown otherwise.

The ALJ found that the plaintiff neither complained of, nor was treated for, memory loss until after his DLI and that, while he alleged that he had suffered from headaches since his motor vehicle accident, he told providers by April 2013 that his headaches were improving and thereafter reported further improvement with different types of treatment. *See* Record at 15-16. At oral argument, the plaintiff's counsel acknowledged that the record evidence concerning the plaintiff's post-concussion syndrome for the period prior to his DLI is relatively sparse, consisting mainly of the plaintiff's subjective complaints of headaches. Nonetheless, he maintained that the ALJ erred in relying on the timing of his diagnosis, failing to identify any other injury or event that would have caused the impairment, and failing to make any findings as to the degree of limitation caused.

---

[2] At oral argument, the plaintiff's counsel contended that *Dennett* is distinguishable on the bases that, unlike in this case, the ALJ in *Dennett* made an express finding that the claimant had no medically determinable impairment prior to his DLI, the impairment at issue was post-traumatic stress disorder, and there was a question of whether alcohol use was the cause of any disability. *See Dennett*, 2008 WL 4876851, at *1. I perceive no material distinction. While it is true that, in this case, the ALJ did not expressly find that the plaintiff had no medically determinable post-concussion syndrome prior to his DLI, it is clear from her discussion that she so concluded. She noted that the record prior to the plaintiff's DLI contained mostly subjective complaints of headaches, which were not comprehensively evaluated, and that he was not diagnosed with post-concussion syndrome with symptoms of headaches until after his DLI. *See* Record at 16. That the plaintiff in this case claims disability stemming from a different impairment and that there is no issue involving alcohol use are distinctions without a difference.

5

Yet, a claimant bears the burden at Step 2 of establishing the severity of an impairment. *See, e.g.*, *Day v. Berryhill*, No. 1:16-cv-00593-JAW, 2017 WL 5037454, at *3 (D. Me. Nov. 2, 2017) (rec. dec., *aff'd* Nov. 20, 2017). The plaintiff identifies no limitations that should have been assessed as a result of either the mental (memory loss) or physical (headaches) aspects of his post-concussion syndrome. *See* Statement of Errors at 6-7. To the extent that he relies on his diagnosis, a diagnosis, standing alone, does not establish the severity of an impairment or its resulting limitations. *See, e.g., Dowell v. Colvin*, No. 2:13-cv-246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). He, therefore, fails to demonstrate his entitlement to remand based on any asserted error in the handling of his post-concussion syndrome.

### 2. Obesity

The plaintiff next argues that he is entitled to remand because, in violation of Social Security 02-1p ("SSR 02-1p"), the ALJ failed to consider the effects of his obesity. *See* Statement of Errors at 8; SSR 02-1p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018), at 251-52 (commissioner will consider obesity in determining whether a claimant has a medically determinable impairment and whether his impairment(s) are severe, meet or equal a so-called "listing," or prevent him from doing past relevant work or other work existing in significant numbers in the national economy).

Nonetheless, SSR 02-1p also makes clear that "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment" and that the commissioner "will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p at 253. "It is the plaintiff's burden to identify evidence in the record of specific functional limitations caused by [his] obesity." *Webber v. Colvin*, No. 2:13-cv-00236-NT, 2014 WL 3530705, at *3 n.3 (D. Me. July 15, 2014).

The plaintiff cites three pages in the record for the propositions that he has Level I Obesity and that he raised "the issue of obesity as an additional severe impairment . . . in written argument presented to the ALJ prior to the hearing." Statement of Errors at 8. The first is the hearing transcript ("I'm 6' tall and I think like 225"), Record at 39; the second is a page from the initial determination in this case setting forth his self-reported height and weight, *see id*. at 88; and the third is from a pre-hearing memorandum that names obesity in a list of alleged severe impairments but does not address its impact, *id*. at 283. As the commissioner argues, *see* Opposition at 6-7, these citations fall short of demonstrating reversible error in the ALJ's failure to address the plaintiff's obesity.

### 3. Carpal Tunnel Syndrome

The ALJ found that the plaintiff had been diagnosed with carpal tunnel syndrome after his DLI and that the condition was not severe. *See* Record at 16. She noted that "an EMG conducted in September 2016 showed . . . mild right carpal tunnel syndrome without denervation and mild right ulnar sensory neuropathy at the wrist." *Id*. at 19 (citation omitted). Nonetheless, she explained that she "limited the [plaintiff]'s lifting/carrying and established limits to vibration in consideration of his carpal tunnel syndrome, even though the condition has not created more than minimal work related limitations, is considered not severe[,] and was established after his [DLI]." *Id*.

The plaintiff complains that, while the ALJ purported to assess limitations related to his carpal tunnel syndrome, they are no different from limitations assessed by agency nonexamining consultant Donald Trumbull, M.D., who did not find a medically determinable impairment of carpal tunnel syndrome but assessed identical limitations. *See* Statement of Errors at 8-9; Record at 106-09.

7

As the commissioner rejoins, *see* Opposition at 5-6, any error is harmless. The ALJ having explained that she assessed limitations related to the plaintiff's carpal tunnel syndrome despite finding that it was not a medically determinable impairment prior to his DLI and was, in any event, nonsevere, any assessment of limitations flowing from that condition is more favorable to the plaintiff than the evidence would otherwise support. Hence, it cannot form the basis for remand. *See, e.g., Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015) ("[A] claimant may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support.") (footnote and citation omitted).

## B. Weighing of Expert Opinions

The plaintiff next argues that the ALJ erred in "not provid[ing] 'good reasons' for giving less weight to the opinions of treating physicians [Nathan Jean, D.O.] and [Karen Lauze, M.D.] than to the non-examining reviewing opinion of Dr. Trumbull." Statement of Errors at 10; *see also* 20 C.F.R. § 404.1527(c)(2) (ALJ "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's medical opinion"). I find no error.[3]

The ALJ gave little weight to Dr. Jean's opinion that the plaintiff could sit, stand, or walk for about two hours in an eight-hour workday, *see* Record at 791, because there was "no evidence to support such limitations[,]" which suggested that the plaintiff would need to spend two hours

---

[3] The plaintiff also contends that the ALJ "erroneously gave less weight to the opinion of reviewing and examining physician [Frank A. Graf, M.D.] than to the opinion of Dr. Trumbull" and based her evaluation of the opinion of treating mental health provider Charles Farrell, L.C.M.H.C., upon her "erroneous evaluation of [the plaintiff's] mental impairment(s), as previously discussed herein." Statement of Errors at 10. He also describes the ALJ's handling of the opinion of a treating chiropractor, Amy Deck, without explicitly challenging it. *See id.* at 9-10. As the commissioner notes, *see* Opposition at 7 n.3, 13, any challenge to the ALJ's assignment of little weight to these opinions is waived for lack of developed argumentation, *see, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citations omitted). Assuming, *arguendo*, that the challenge to the Farrell opinion is sufficiently developed, it is unavailing because, as discussed above, the plaintiff fails to demonstrate harmful error in the ALJ's assessment of his mental impairment(s).

of each workday lying down, *id.* at 21, and little weight to his opinion that the plaintiff would miss about two days of work each month, *see id.* at 793, because it was "purely speculative[,]" given the plaintiff's successful management of activities of daily living, *id.* at 21.

The plaintiff complains that the ALJ failed to make clear what evidence would have supported Dr. Jean's limitations or "what sort of findings or supporting evidence would be required in order for the ALJ to accept" Dr. Jean's estimate of the number of days he would miss work each month. Statement of Errors at 11. This is simply not required. *See* 20 C.F.R. § 404.1527(c)(2) (ALJ required to provide "good reasons" for weight given treating source's medical opinion following consideration of relevant factors);[4] *Tozier v. Berryhill*, No. 1:16-cv-00540-NT, 2017 WL 3331776 at *8 (D. Me. Aug. 4, 2017) (rec. dec., *aff'd* Sept. 11, 2017) (while an ALJ must explain why a treating source's opinion was not adopted, he or she need not slavishly discuss all relevant factors in doing so).

The plaintiff further argues that, in deeming Dr. Jean's opinion inconsistent with the plaintiff's activities, the ALJ failed to consider "the distinction between managing limited activities of daily living and sustaining gainful employment." Statement of Errors at 11. However, the ALJ did not find the plaintiff capable of gainful employment based on his daily activities but, rather, properly deemed those activities inconsistent with the limitations assessed by Dr. Jean. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole [including activities of daily living], the more weight [an ALJ] will give to that medical opinion."). The ALJ supportably reasoned that the plaintiff's activities of home schooling his 14-

---

[4] Factors relevant to the assessment of a medical opinion are (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. § 404.1527(c).

9

year-old son, keeping his medical appointments, and implementing medical treatment plans "suggest[ed] that he can be reliable in performing tasks." Record at 21. The ALJ, accordingly, provided good reasons for the weight assigned to Dr. Jean's opinion.

The ALJ gave little weight to the retrospective opinion of Dr. Lauze because it was "internally inconsistent[.]" *Id.* Despite describing the plaintiff's pain as "mild" and noting that he "[could] generate 5/5 strength[,]" Dr. Lauze limited him to standing or walking for less than two hours in an eight-hour workday and lifting no more than 10 pounds and opined that he would likely miss about three days of work each month. *Id.* at 1113, 1115-17. Internal inconsistency constitutes a good reason for an ALJ to assign less weight to a medical opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion" and "[t]he better an explanation a source provides for a medical opinion, the more weight [an ALJ] will give that medical opinion.").

The plaintiff argues that the "5/5" scale and "mild" have no qualifiers, Statement of Errors at 11, but he fails to identify evidence supporting the limitations assigned by Dr. Lauze. Remand, accordingly, is not required based on his challenge to the ALJ's handling of the Lauze opinion. *See, e.g., Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) ("The plaintiff makes no attempt to identify support for the degree of limitations assigned by [the physician] in [the physician]'s treatment records, and, therefore, the [ALJ's] rejection of those limitations on that basis is unchallenged.").[5]

---

[5] In addition, as the commissioner observes, *see* Statement of Errors at 10, the First Circuit has described a mild objective finding as "inconsistent with intense, disabling pain[.]" *Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 429 (1st Cir. 1991).

The ALJ gave great weight to the opinion of Dr. Trumbull because, in addition to being consistent with the medical evidence of record, it was "consistent with the level of treatment the [plaintiff] has received and with his activities of daily living." Record at 21. The plaintiff argues that the Trumbull opinion cannot stand as substantial evidence of his RFC because Dr. Trumbull (i) did not have the benefit of review of later-submitted evidence that "included additional diagnoses and treatment concerning post-concussion syndrome with symptoms of headaches" and (ii) "set forth virtually no findings of fact or analysis to support his opinion," for the most part simply affirming the opinion offered on initial review by agency nonexamining consultant Archibald Green, D.O. Statement of Errors at 12.

On the first point, as the commissioner observes, *see* Opposition at 13, the fact that a consultant has not seen later-submitted evidence does not, standing alone, undermine an ALJ's reliance on his opinion, *see, e.g.*, *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) ("[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the [ALJ].") (citations omitted).

For the reasons discussed above, the ALJ supportably found that the plaintiff's post-concussion syndrome was not a medically determinable impairment as of his DLI and, even if it was, it imposed only minimal functional limitations as of that time and beyond. Thus, the fact that

11

Dr. Trumbull did not review evidence concerning the plaintiff's post-concussion syndrome subsequent to his DLI did not undermine the ALJ's reliance on his opinion.

That Dr. Trumbull affirmed the Green opinion also does not call into question that reliance. As the commissioner observes, *see* Opposition at 12, Dr. Trumbull explained that "new [medical evidence of record] submitted was only for [the] current dates[,]" Record at 105. In other words, the plaintiff did not provide any new evidence relevant to the period prior to his DLI. The plaintiff fails to "specify what it is about or within each [subsequent medical] exhibit that would require the state-agency physicians to come to different conclusions." *Bourret v. Colvin*, No. 2:13-cv-00334-JAW, 2014 WL 5454537, at *4 (D. Me. Oct. 27, 2014).

Remand, accordingly, is unwarranted on the basis of the plaintiff's challenge to the handling of the medical opinion evidence.

### C. Assessment of Plaintiff's Subjective Statements

The plaintiff finally contends that, in violation of Social Security Ruling 16-3p ("SSR 16-3p"), the ALJ disregarded his statements concerning the intensity, persistence, and limiting effects of his symptoms solely because they were not substantiated by the objective medical evidence and deemed them inconsistent with his level of treatment without considering his reasons for not seeking additional treatment. *See* Statement of Errors at 14-15. He adds that several of the reasons provided for discounting his statements are unsupported by substantial evidence. *See id*. at 15. I find no reversible error.

First, the ALJ did not rely solely on the objective medical evidence in assessing the plaintiff's statements. She also considered his activities of daily living, course of treatment, and testimony at hearing. *See* Record at 20.

Second, the plaintiff omits describing the record evidence of his reasons for not seeking additional treatment, instead relying on citation to three pages of his hearing transcript. *See*

Statement of Errors at 14-15 (citing Record at 73-75). Presumably, he means to rely on his testimony that he declined to undergo surgery because he "felt the risk was too high[,]" explaining, "I can't risk being paralyzed having a 15-year-old son at home." Record at 75. While the ALJ did not address this testimony, she seemingly considered it, recognizing that "[s]urgery for the [plaintiff]'s cervical degenerative disease has been discussed, but the [plaintiff] elected not to proceed with surgery, opting for physical therapy instead." *Id*. at 19 (citations omitted); *see also* SSR 16-3p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018), at 673 (ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). In any event, the plaintiff fails to demonstrate that any error was harmful in view of the ALJ's discussion of his course of treatment overall and other factors bearing on her assessment of his subjective statements, some of which he does not challenge. *See* Record at 20.

Third, and finally, remand is unwarranted on the basis of the plaintiff's challenges to particular findings.

The plaintiff asserts that the ALJ erroneously cited to a treatment record from a provider who was treating him for hyperlipidemia and chylomicronemia, not degenerative disc disease, as evidence that his motor strength and range of motion in his extremities were normal. *See* Statement of Errors at 15 (citing Record at 20, 681). However, as the commissioner notes, *see* Opposition at 15-16, the plaintiff reported "muscle weakness and back pain" to that provider, who performed a physical examination that yielded normal findings, *see* Record at 680-81.

The plaintiff also complains that the ALJ erroneously deemed Dr. Lauze's note that he could "'generate full strength'" despite his "'giveaway weakness'" inconsistent with his testimony

regarding his lifting limitations without considering the need to evaluate his ability to perform lifting activities on a sustained basis in a workplace setting. Statement of Errors at 15 (quoting Record at 20). However, objective findings recorded in treatment notes, which by definition assess a claimant's status during brief periods of time, are fair game in evaluating a claimant's subjective statements. *See, e.g.*, 20 C.F.R. § 404.1529(c)(2) (describing "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption[,]" as "a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work").

The plaintiff next asserts that the ALJ erroneously evaluated his testimony concerning his ability care for his 14-year-old son, disregarding his testimony that his son actually helped him by performing many physical tasks that were needed for their survival. *See* Statement of Errors at 15; Record at 20 ("[A]t all times the [plaintiff] has been to care for his personal needs and take care of his 14 year old son."). While the plaintiff testified that his son performed some of the more physically demanding tasks, such as splitting wood, *see* Record at 75, he also testified that he assisted his ex-wife in overseeing his son's home schooling, did simple chores such as laundry and dishwashing, prepared simple meals, drove, shopped, and tended a wood-burning stove, *see id*. at 41, 62-66, 75.

The plaintiff lastly contends that a June 2013 treatment note on which the ALJ relied as evidence that he was "'self-employed and owns a farm as well as is a carpenter, suggesting he may be more active than he states,'" set forth that information only in his "Social History," stating on the same page that his "'biggest concern at this point is returning to work, but due to his discomfort he has been unable to perform any manual labor whatsoever.'" Statement of Errors at 15 (quoting

14

Record at 20, 665). This point is well-taken. However, as the commissioner observes, *see* Opposition 17, the ALJ identified other evidence of record indicating that the plaintiff was more active than he stated, including his own testimony that he was able to lift up to 25 pounds, which, she noted, was consistent with her RFC determination, *see* Record at 20.

For all of these reasons, the ALJ's analysis of the plaintiff's subjective statements easily survives the deferential standard of review. *See, e.g., Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) (An ALJ's evaluation of a claimant's subjective statements "is entitled to deference, especially when supported by specific findings.").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 8th day of February, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge